582 P.2d 403
James C. STOTLAR, and Susan Stotlar, Petitioners-Appellants,

v.

James M. HESTER, James C. Hester Company, a/k/a J. C. Hester Company, and George Campbell and Gayle Campbell, Defendants-Appellees.

No. 3547.

Court of Appeals of New Mexico.

July 5, 1978.

Writ of Certiorari Denied July 28, 1978.

Randolph B. Felker, Felker & McFeeley, P. A., Santa Fe, for petitioners-appellants.

Joseph A. Roberts, Burttram & Roberts, Santa Fe, for defendants-appellees.

## OPINION

WOOD, Chief Judge.

Plaintiffs purchased residential real property from the Campbells. Alleging that they relied on an appraisal made by Hester and that this appraisal was erroneous, plaintiffs sought damages from Hester and the Campbells. The trial court denied the Campbells' motion for summary judgment. It granted Hester's summary judgment motion. Plaintiffs appeal the ruling in favor of Hester. We discuss: (1) appealability of the judgment; (2) negligent representation; (3) third party beneficiary of a contract; and (4) the propriety of summary judgment as to (a) liability and (b) damages.

*Appealability of the Judgment*

The summary judgment dismissed plaintiffs' claims against Hester with prejudice. Hester moved to dismiss plaintiffs' appeal, asserting the summary judgment was not an appealable final judgment. The motion was denied.

The basis for plaintiffs' appeal is that the summary judgment was a "final judgment". See Rule of App.Proc., Civil, 3(a)(1). The dismissal of plaintiffs' claims against Hester with prejudice was in the form of a final judgment. *Campos v. Brown Construction Company,* 85 N.M. 684, 515 P.2d 1288 (Ct.App.1973).

■ In multiple party suits, Rule of Civ. Proc. 54(b)(2) authorizes a judgment adjudicating "all issues" as to one or more, but fewer than all parties. "Such judgment shall be a final one unless the court, in its discretion, expressly provides otherwise and a provision to that effect is contained in the judgment." The summary judgment adjudicated all of plaintiffs' claims against Hester; there was no provision in the summary judgment that it was not final. The summary judgment was an appealable final judgment under Rule of Civ.Proc. 54(b)(2). The motion to dismiss the appeal was properly denied. *Montano v. Williams,* 89 N.M. 86, 547 P.2d 569 (Ct.App.1976), aff'd, 89 N.M. 252, 550 P.2d 264 (1976).

*Negligent Representation*

One of plaintiffs' theories of liability was that Hester appraised the property negligently. The issue is whether plaintiffs can recover from Hester on the basis of this negligence. This issue arises because it was the Campbells who arranged for Hester to

appraise their property. The showing made is that there was no privity of contract between plaintiffs and Hester.

Hester cites *Staley v. New,* 56 N.M. 756, 250 P.2d 893 (1952) for the proposition that one not a party to a contract cannot maintain a suit upon it. The suit in *Staley* was for breach of contract; the theory of liability involved in this issue is the asserted negligence of Hester. *Staley* is not applicable.

Hester relies on *Fidelity & Deposit Co. of Maryland v. Atherton,* 47 N.M. 443, 144 P.2d 157 (1943) for the view that Hester is not liable to plaintiffs for his asserted negligence. In *Atherton,* supra, the claim was that accountants negligently performed their audit contract with the county commissioners. A deputy county treasurer embezzled money, the bonding company paid the loss and sought to recover from the accountants. *Atherton* disposes of the bonding company's negligence claim as follows:

> They . . . [the accountants] owed a duty to third persons, if any, [the bonding company] to whom they knew, or reasonably should have known, their employer intended to exhibit their reports, and upon which they might act to their injury, to make such reports without fraud. But there is no finding that appellees made a fraudulent report, or of a reliance upon appellees' report by . . . [the bonding company], nor, of course, that . . . [the bonding company] was injured by such reliance, so as to bring the case within the doctrine of *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139.

Hester cites *Atherton,* supra, for the view that he cannot be liable to plaintiffs because there is no claim that his appraisal was fraudulent.

Another case involving the negligence theory of liability is *Valdez v. Gonzales,* 50 N.M. 281, 176 P.2d 173 (1946). Valdez sued the secretary of state and the county clerk for negligently failing to properly instruct election officials in the manner of conducting an election. The *Valdez* opinion cites *Atherton,* supra, and quotes with approval from *Ultramares,* cited above in the quotation from *Atherton,* supra. *Valdez,* supra, approves the view that liability for negligent language arises only when the person furnishing information, spoken or written, owes a duty to give it with care, and the person receiving it has a right to rely on the information. *Valdez,* supra, also approves the view that negligent words are not actionable absent a contract relation or something in the nature of privity of contract.

We understand the holdings of *Atherton,* supra, and *Valdez,* supra, to be as follows: The tort of negligence by words is recognized. Absent fraud, the tort requires a duty on the part of the person furnishing the information and requires the person receiving the information have a right to rely on it. However, under *Valdez,* supra, one cannot recover for this tort in the absence of privity of contract. This requirement was removed in *Steinberg v. Coda Roberson Construction Co.,* 79 N.M. 123, 440 P.2d 798 (1968).

*Steinberg,* supra, held that the second purchaser of a home (the purchaser from the original purchaser), could recover from the builder for negligent installation of a roof. In so holding, *Steinberg,* supra, states "the great weight of authority no longer recognizes privity of contract as having a place in tort law" and that privity of contract is "no longer . . . recognized as a factor when considering liability on a negligence theory". *Steinberg,* supra, did not involve a claim of negligent language. However, that decision unqualifiedly rejected the need for privity of contract in a claim based on negligence.

With privity of contract removed as a requirement for a negligence claim, and thus removed as a requirement for negligence by words, our concern is with the limitations on the tort. *Maxey v. Quintana,* 84 N.M. 38, 499 P.2d 356 (Ct.App.1972) called the tort "negligent misrepresentation" and held the tort was determined by the general principles of the law of negligence. In support of this statement, *Maxey,* supra, cited Restatement of Torts

(Second) § 552. *Neff v. Bud Lewis Company,* 89 N.M. 145, 548 P.2d 107 (Ct.App.1976) refers to the same Restatement section in discussing the "reliance" requirement stated in *Valdez v. Gonzales,* supra.

3 Restatement of Torts (Second) § 552 (1977) reads:

*Information Negligently Supplied for the Guidance of Others*

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

■ The Restatement of Torts is persuasive authority. With the exception of the discarded privity requirement, 3 Restatement of Torts (Second) § 552 (1977) is consistent with the tort recognized in *Valdez v. Gonzales,* supra. This Restatement section states limitations to the tort, limitations with which *Valdez v. Gonzales,* supra, was concerned. We hold that the New Mexico tort of negligence by words is set forth in 3 Restatement of Torts (Second) § 552 (1977). Compare *Proctor v. Waxler,* 84 N.M. 361, 503 P.2d 644 (1972).

The limitations on the tort, of concern in this case, are stated in 3 Restatement of Torts (Second) § 552(2)(a) and (b) (1977). The comment to the Restatement explains these limitations.

The rule . . . subjects the negligent supplier of misinformation to liability only to those persons for whose benefit and guidance it is supplied.

[I]t is not necessary that the maker should have any particular person in mind as the intended, or even the probable, recipient of the information. In other words, it is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class who might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it. It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons or group. It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given. It is not enough that the maker merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated.

We refer to the showing made as to these limitations in discussing the propriety of summary judgment.

*Third Party Beneficiary*

Plaintiffs' alternate theory of liability was that they were the beneficiaries of the

contract by which the Campbells engaged Hester to appraise the property and, as beneficiaries, could sue Hester for breach of contract. The breach would be the asserted failure of Hester to properly appraise the property.

■ Two or more parties may contract so that a third party, or parties, will be beneficiaries of the agreement. One claiming to be a beneficiary must show either that he is the beneficiary intended by the parties or a member of a class of beneficiaries intended by the parties. *Hoge v. Farmers Market & Supply Co. of Las Cruces,* 61 N.M. 138, 296 P.2d 476 (1956).

■ A third party beneficiary does not have to be named in the contract. However, where, as here, the third party would be a donee beneficiary, the third party may enforce the contract only if the provided performance would be a pecuniary benefit to the third party and the promisor had reason to know the benefit was contemplated by the promisee as one of the motivating causes for entering the contract. "[T]he third party can show by evidence extrinsic to a contract which contains no indication of intent to benefit him that its provisions were in fact intended for his benefit." *Permian Basin Investment Corporation v. Lloyd,* 63 N.M. 1, 312 P.2d 533 (1957).

■ Plaintiffs could enforce the contract between the Campbells and Hester for an appraisal of the Campbells' property if plaintiffs were third party beneficiaries of the contract. The financial benefit of an accurate appraisal to plaintiffs, as prospective purchasers of the Campbells' property, may be assumed. However, to be third party beneficiaries, Hester must have had reason to know that the Campbells intended such a benefit for prospective purchasers of their property. This intent may be shown by extrinsic evidence if not stated in the contract.

We refer to the showing made as to these requirements in discussing the propriety of summary judgment.

*Propriety of Summary Judgment*

Hester, as the movant for summary judgment, had the burden of establishing, prima facie, that he was entitled to summary judgment. *Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972). Hester failed to meet this burden as to either theory of liability and as to one of the damage claims; he did meet this burden for one of the damage claims.

(a) Liability

■ There clearly is a factual issue as to plaintiffs' reliance on Hester's appraisal. The Campbells hired Hester to appraise the Campbells' property. There is no showing as to the express provisions of this contract. However, inferences as to the intent of the parties in entering the contract were shown. The appraisal report limits its use by anyone other than the Campbells, the mortgagee, other financial institutions or appraisal organizations, or government organizations without the prior written consent of the appraiser. This limitation carries an inference that the appraisal was not intended for the benefit of prospective purchasers. Such an inference supports summary judgment as to both theories of liability.

However, there is a showing which conflicts with the limitation in the appraisal. The affidavit of the real estate selling agent, who was the agent of the Campbells, states that the appraisal was for the purpose of refinancing the property. The listing agreement and the affidavit of the Campbells support the view that the appraisal was for the purpose of refinancing. The Campbells' willingness to sell depended on receiving a price sufficient to enable them to buy another residence. The real estate agent advised plaintiffs that the property was being appraised; the agent obtained the appraised valuation from Hester and supplied the appraised valuation to the plaintiffs. The plaintiffs' offer to purchase was based on this appraisal. Hester's affidavit states that his appraisal was transmitted to a financial institution. This institution held the Campbells' mortgage on

the property. This showing carries an inference that the appraisal was obtained so that a purchaser from the Campbells could finance the purchase through the financial institution. This showing in this paragraph raises a factual issue as to whether a prospective purchaser was an intended beneficiary of the appraisal, and a factual issue as to whether Hester knew of this intention. This showing is in opposition to summary judgment on the theories of liability.

The showing to the trial court was of disputed issues of material fact. There being disputed issues of material fact, summary judgment was improper as to each theory of liability. *Goodman v. Brock,* supra.

(b) Damages

■ There are two damage claims. One is based on the allegation that Hester's appraisal erroneously reported the square footage of the property. Plaintiffs never saw Hester's appraisal before contracting to buy the property; they were not told of Hester's report as to the square footage before contracting the purchase. What plaintiffs relied on was Hester's appraisal as to the value of the property. An erroneous square footage figure is of consequence if this error contributed to an erroneous valuation. Hester made no showing that the alleged error in square footage did not result in an erroneous valuation. Thus, summary judgment was improper as to the damage claim based on an erroneous square footage.

■ The second damage claim is that Hester "allocated no deduction on the market value of the premises for a poor roof condition, when in fact the roof was in poor condition." The undisputed showing is that the property was listed for sale as approximately 20-year-old property with its original roof. Hester appraised the property "as is" and, in so doing, stated that he assumed there were no hidden or unapparent property conditions, and assumed no responsibility for such conditions. This showing is uncontradicted that the property, including the roof, was valued "as is"; thus, the valuation included the alleged poor roof condition. With this showing, it was plaintiffs' burden to show the "as is" valuation was improper; they did not do so. Summary judgment was properly granted in connection with the damage claim based on a poor roof condition.

The summary judgment in favor of Hester is reversed, except as to the damage claim based on the roof condition. Summary judgment as to that claim is affirmed. The cause is remanded to the trial court for proceedings consistent with this opinion.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.